
FILED
AUG 0 3 2010

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Appellee,<br><br>-vs<br><br>DALE LESMEISTER,<br><br>Defendant/Appellant. | CR 09-30092<br><br>OPINION AND ORDER<br>AFFIRMING DEFENDANT'S<br>CONVICTION |

On December 10, 2009, Dale Lesmeister ("Lesmeister") was found guilty of the misdemeanor charge of Assault by Striking, Beating, or Wounding under 18 U.S.C. §§ 1152 and 113(a)(4) after a court trial before United States Magistrate Judge Mark A. Moreno. The judgment of conviction was filed on February 24, 2010. (Doc. 39). Lesmeister filed an Amended Notice of Appeal on March 9, 2010. (Doc. 41). Because the trial was held by a United States Magistrate Judge, under Fed. R. Cr. P. 58(g)(2)(B) the appeal is to this Court.

On appeal, Lesmeister argues that the evidence was insufficient to support his conviction. Lesmeister in particular argues that he is not guilty because he was using reasonable force in defense of his property at the time of the assault. For the reasons explained below, this Court affirms Lesmeister's conviction.

## I. Standard of Review

When a defendant appeals his conviction, a reviewing court considers the sufficiency of evidence de novo, views the evidence in the light most favorable to the fact finder's verdict, and draws all reasonable inferences in the Government's favor. United States v. Butler, 594 F.3d 955, 964 (8th Cir. 2010); United States v. May, 476 F.3d 638, 640-41 (8th Cir. 2007). A reviewing court does not weigh the evidence or assess the credibility of the witnesses. Butler, 594 F.3d at 964. A conviction may be reversed "only if no reasonable jury could have found the

defendant guilty beyond a reasonable doubt." Id. (citing United States v. Santana, 524 F.3d 851, 853 (8th Cir. 2008)).

**II. Facts**

Lesmeister owns a gas and service station in Eagle Butte, South Dakota, which witnesses referred to variously as Dale's Sinclair or Dale's Service. Eagle Butte is within the Cheyenne River Indian Reservation. Lesmeister's business is open to the public, performs service work, and has pumps for gas, vending machines, and other services.

The events giving rise to this case occurred around 11:00 a.m. on September 3, 2009, at Lesmeister's service station. No fewer than five people testified about having observed part or all of the conduct that led to Lesmeister's conviction for assault by striking, beating or wounding. The testimony of those five witnesses, although containing some minor variances understandable by their different perspectives, leaves little question about what occurred on September 3, 2009.

Carl Dupris, age 55 at the time of the trial, apparently was quite intoxicated on the morning of September 3, 2009. He was in the process of walking across a gravel area that is part of the Lesmeister service station lot, toward the Eagle Stop and Dairy Queen. To some of the five eyewitnesses, Dupris appeared to be drunk and was walking slowly across the lot comprising part of Lesmeister's business.

According to witness Sammy Houston, who described herself as a friend of Lesmeister who was at the business to get snacks from the vending area, Lesmeister came out of his business and told Dupris in a direct tone that he needed to leave. (T.16.)[1] Dupris then turned to Lesmeister and, using his middle finger, "flipped off" Lesmeister. (T.16-17, T.162, T.193-94, T.280, T.308). Dupris then turned away from Lesmeister to continue to walk toward the Eagle Stop and Dairy Queen. (T.17, T.194).

Lesmeister, after having been "flipped off" by Dupris, ran to where Dupris was walking away. (T.17, T.61, T.193-94, T.226, T.240, T.309). Three of the five eyewitnesses saw

---

[1]This Court uses the abbreviation "T" to refer to the trial transcript. Where the facts are largely not at issue, the Court has chosen not to include citations to the transcript pages. Where particular testimony is referenced, however, the Court will cite to the trial transcript.

Lesmeister shove Dupris using two extended hands, pushing him hard on the back. (T.17, T.61-62, T.195). One of the eyewitnesses saw Lesmeister running toward Dupris, but her view was obstructed such that she did not see the actual shove. (T.226, T.240-242). The fifth witness, an employee of Lesmeister who was not interviewed at the scene, testified that Lesmeister contacted Dupris' back with just one hand. (T.309).

Dupris, having been pushed in the back by Lesmeister, fell over forward hitting his face hard on the gravel of the lot. (T.18, T.62, T.195, T.310). Some of the witnesses then observed Lesmeister roll Dupris over and grab Dupris' hat and throw it at him. (T.19, T.30, T.196, T.231). Lesmeister then told someone to call an ambulance and walked walking away to the area of a vacuum cleaner to coil up the hose.

Several of the eyewitnesses approached Dupris and found him unconscious and bleeding from his face. (T.20, T.66-67, T.200, T.235). Several of the eyewitnesses were upset with Lesmeister afterwards for his treatment of Dupris. Words were exchanged, with Lesmeister responding to those who were caring for Dupris that if they cared for him so much, why was Dupris out drinking and out on the street all the time. (T.35). One of the eyewitnesses even threw some gravel towards Lesmeister, as he walked away from them after the verbal confrontation. (T.37, T.230).

Cheyenne River Sioux Tribe Officer Don Farlee responded to the scene. When he interviewed Lesmeister, Lesmeister said "if anything, he had pushed a guy." (T.147). Lesmeister told Officer Farlee that Dupris was bothering customers, that Lesmeister told Dupris to leave, and that Dupris had flipped him off. Lesmeister said that he had then pushed Dupris, noticed some blood, and told someone to call the ambulance. (T.162-63).

An ambulance took Dupris to Indian Health Services at Eagle Butte, where his blood alcohol level was recorded as .445. (T.123). While in Eagle Butte, a large laceration of Dupris' forehead was sutured. Dupris then went by ambulance to the Rapid City Regional Hospital because of the extensiveness of his facial lacerations. (T.118). The extensive facial lacerations included cuts to his nose, upper lip, lower lips, minor dental injuries and nasal bone fractures. Dupris' teeth had pushed through his lip from the blunt force trauma of having fallen on his face on the gravel lot. (T.121-22). The treating physician from Rapid City Regional Hospital testified

that the severity of the facial injuries suggested more force than a simple fall to the ground, although it was possible that the injuries were from a fall. (T.138-40). One of the eyewitnesses testified that the force of the push from Lesmeister would have caused a person to fall whether drunk or sober. (T.39.)

By all accounts, Dupris' back was to Lesmeister and Dupris was walking towards the Eagle Stop and Dairy Queen at the time of the shove. The nature of the injuries, from Dupris having fallen on his face, confirms that Lesmeister shoved Dupris in the back, consistent with all of the eyewitness testimony. No eyewitness testified that Dupris was doing anything threatening to anyone or damaging anything. Rather, Dupris "flipped off" Lesmeister and then turned to continue walking in a direction where he would soon leave Lesmeister's property. (T.76). Lesmeister's employee who testified on Lesmeister's behalf acknowledged that Dupris was not endangering customers (T.321) and that it would have taken Dupris approximately ten more steps to be completely off Lesmeister's property. (T.329). Another witness believed Dupris to be within eight or ten feet of leaving Lesmeister's lot when Lesmeister pushed him. (T.42).

## III. Discussion

For Lesmeister to be guilty of assault by striking, beating, or wounding under 18 U.S.C. § 113(a)(4), the Government must prove, beyond a reasonable doubt, some form of physical contact. United States v. Herron, 539 F.3d 881, 886 (8th Cir. 2008). The Eighth Circuit has found assault by striking, beating, or wounding to be similar to "battery at common law." Id. (quoting United States v. Whitefeather, 275 F.3d 741, 743 (8th Cir. 2002)). Here, there is no question that Lesmeister shoved Dupris on September 3, 2009, in a manner that would be "battery at common law."

Lesmeister argues that he acted in self-defense of his property from a trespasser, thereby requiring the Government to prove that Lesmeister's force was not justified. Lesmeister specifically argues that, under the affirmative defense of common law justification, he was entitled to use "reasonable force," and that the Government did not provide sufficient evidence to rebut his argument that his force was reasonable. To be sure, once a federal defendant advances a colorable argument of self-defense, the Government must prove beyond a reasonable doubt that the defendant did not act in self-defense. See Mullaney v. Wilbur, 421 U.S. 684, 704 (1975);

United States v. Milk, 447 F.3d 593, 598 (8th Cir. 2006). Lesmeister was not defending himself or any other person when he pushed Dupris. Accordingly, the traditional self-defense argument does not exonerate Lesmeister. Rather, Lesmeister contends that he was acting in defense of his property.

To support his defense of property theory, Lesmeister cites Lemel v. Smith, 187 P.2d 169, 176 (Nev. 1947), Tomblison v. Nobile, 229 P.2d 97, 99 (Cal. App. 1951) and Ryan v. Marren, 104 N.E. 353, 354 (Mass. 1914). All three of those cases are civil cases, decided more than fifty years ago in state courts. They provide limited guidance for the Court and indeed Tomblison appears to undermine Lesmeister's argument. In Tomblison, a civil case filed in California court, the defendant hit the plaintiff with a "blackjack," or a leather bag full of shot. 229 P.2d at 99. The defendant, employed by a restaurant/bar, threw the plaintiff out of the restaurant for being noisy. Id. The plaintiff tried to get back into the restaurant, and after being pulled out, the plaintiff swung and hit the defendant in the face. Id. The defendant struck the plaintiff in the eye with a blackjack. Id. The court provided that though the defendant "had the right to eject trespassers from the premises involved, if the circumstances warranted such action," the "brutal use of a 'blackjack' was clearly without justification" and not reasonably necessary. Id. Like in Tomblison, the evidence presented here sufficiently supports the finding that the force used was not reasonable.

Lesmeister next cites SDCL 22-18-4 as authorizing force or violence when a person reasonably believes it necessary to "prevent or terminate the other person's trespass." SDCL 22-18-4 does not exonerate Lesmeister for several reasons. First, Dupris was not trespassing when walking across the lot of Lesmeister's business, which is open to the public at 11:00 a.m. When a business, like that run by Lesmeister, is open to the public, a person entering at a reasonable time and in a reasonable manner has the implied consent of the owner, so long as the person does not engage in an act inconsistent with the purpose of the business. 75 Am. Jur. 2d. Trespass § 73 (2007); see also State v. Frey, 440 N.W.2d 721 (S.D. 1989) (SDCL 22-18-4 does not apply when entry on defendant's land was justified and not trespass).

Second, Dupris was walking off of Lesmeister's business property at the time Lesmeister pushed him down. Viewing the evidence in the light most favorable to the Government as this

Court must on appeal, the evidence is sufficient for a fact finder to conclude that Lesmeister's force was beyond what one could reasonably believe to be necessary to terminate Dupris' presence at Lesmeister's business. Indeed, Lesmeister's conduct rendered Dupris unconscious while still on Lesmeister's property, rather than ending Dupris' presence on the land.

Third, federal crimes committed on Indian Reservations are controlled by federal statutes and federal common law, not state statutes. The Indian Country Crimes Act ("ICCA") provides in pertinent part:

> Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offense committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian Country.
>
> This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

18 U.S.C. § 1152. The federal criminal code defines most of the basic common law offenses, including assault. 18 U.S.C. § 113. The Assimilative Crimes Act ("ACA"), 18 U.S.C. § 13, operates to "fill the gap" that occurs when the federal criminal code does not define an offense committed within the special maritime and territorial jurisdiction of the United States. When Congress has not enacted a federal crime, the ACA incorporates into the federal criminal code those offenses defined by the state in which the federal land is located. Felix S. Cohen, Handbook of Federal Indian Law § 9.02[1][c][ii] (2005). However, the ACA does not apply when the state criminal law and the federal criminal law overlap; in such a case, the federal definition of the crime shall be used. See Lewis v. United States, 523 U.S. 155, 169-73 (1998). Therefore, the federal criminal code and the federal common law guide this Court.

The parties have cited only one federal case in the United States involving the theory of defense of property. In that particular case, United States v. Barnett, 492 F.2d 790 (5th Cir. 1974), the defendant was charged with assaulting a federal officer. In Barnett, the victim was an

Internal Revenue agent, who went to Barnett's residence to interview Barnett regarding a case under investigation. Id. When the IRS agent mentioned the name of the man being investigated, Barnett "exploded violently, used profanity and knocked [the IRS agent] to the ground." Id. at 791. During the trial, the district court refused to instruct the jury regarding Barnett's claim of use of force in protection of his property from a trespasser. Barnett appealed, asserting that the IRS agent was unlawfully on his property and that Barnett therefore had a right to use force to expel him. In rejecting Barnett's claim, the United States Court of Appeals for the Fifth Circuit reasoned:

> Equally without merit is Barnett's contention that [the IRS agent] was a trespasser and that the force used to expel him was reasonable and thus not actionable. It is undisputed that [the IRS agent] entered the grounds in the line of duty to ask a few simple, official questions and that at all times he was immediately off the shoulder of the road and at a considerable distance from Barnett's house. Giving credence to Barnett's testimony that he asked [the IRS agent] to leave him alone, the bloody assault took place so quickly that [the IRS agent] was precluded from leaving immediately.

Id. at 791.

Similarly, in this case, Dupris, while certainly not on any official business, was walking away from Lesmeister's service station and toward a neighboring business, although still on Lesmeister's lot. When Lesmeister pushed Dupris, Dupris was turned and a short distance from being completely off Lesmeister's lot. As with Barnett's assault of the IRS agent, "the bloody assault took place so quickly that [Dupris] was precluded from leaving immediately." Lesmeister's position is further undermined by the fact that, unlike in Barnett, the court in this case permitted Lesmeister to make the defense of property argument to the finder of fact. (T.349-52).

This Court does not express an opinion whether, under different circumstances, defense of property may be a viable defense in a federal assault case. In summarizing the common law defense of property defense to criminal assault or battery, 6 Am. Jur. 2d. Assault & Battery § 57 (2010) states:

> An owner of property may justify an assault on the ground of defense of one's property. This may be a valid justification for an assault or battery on a trespasser. The defendant owner's conduct must be reasonable.

Id.

> In defending one's property, the owner may only use such force as appears reasonably necessary for that purpose, and must stop short of endangering the intruder's life. Deadly force may be used only if it is necessary to prevent a felony, or in urgent or extreme cases. The use of deadly force is not permitted for the defense or retrieval of personal property.

Id. at § 60.

Again, even under the treatise's summary of this area of law, the defense would not justify Lesmeister's conduct. Dupris was in the process of leaving the property when Lesmeister pushed him down. There was also sufficient evidence that the force exerted by Lesmeister was beyond what was reasonably necessary to get Dupris off the property and indeed resulted in Dupris being rendered unconscious on the property, as stated above.

### IV. Conclusion

A reasonable finder of fact, in considering all the evidence, could have concluded beyond a reasonable doubt that Lesmeister was guilty of the misdemeanor offense of assault by striking, beating or wounding. Testimony was offered to the effect that Lesmeister ran at the victim from behind, put both hands on Dupris' back, pushed him forward, and caused him to fall on his face thereby injuring him. The treating physician stated that the victim's extensive facial injuries were caused by "fairly considerable force." The evidence was sufficient to establish the elements of assault by striking, beating, or wounding and to disprove any theory of self-defense or defense of property. Therefore, it is

ORDERED that the Judgment of Conviction (Doc. 39) is affirmed.

Dated this 3rd day of August, 2010.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE